359 P.2d 18

**Ray TANNER, Plaintiff and Appellant,**

**v.**

**UTAH POULTRY & FARMERS COOPERATIVE, a corporation, George Rudd and Charles P. Rudd, Defendants and Respondents.**

**No. 9270.**

Supreme Court of Utah.

Feb. 9, 1961.

---

Richards, Bird & Hart, Clarence J. Frost, Salt Lake City, for appellant.

Irwin Clawson, Salt Lake City, for respondents.

WADE, Chief Justice.

Plaintiff Ray Tanner appeals from a summary judgment in favor of the defendants, Utah Poultry & Farmers Cooperative, and George and Charles Rudd. The summary judgment was granted on the theory that Tanner had signed a release dated October 7, 1952, which discharged defendants from all prior claims of Tanner. This release contains the following:

"Release

"In consideration of the payment of $9,350.06 from the Utah Poultry and Farmers Cooperative (being the balance owed to me under the marketing

of my 1951 crop of turkeys) receipt of which is acknowledged, I do hereby release and discharge the said Cooperative from any and all debts, claims, demands and accounting of whatsoever name, nature and description, excepting only that I reserve the right to receive as the same may become due, whatever sums may be paid from time to time under the certificates of interest issued to me and under the letter to me from the Cooperative * * *."

Plaintiff's complaint contains five separate counts. Each count claims that there is a balance owing by defendants to plaintiff from marketing his turkey crop for one or more years commencing with 1942 to and including 1951. That defendants falsely and fraudulently represented to plaintiff that they had paid him in full for the crop or crops in question, and that plaintiff did not discover that such misrepresentations were not true until May of 1957, less than three years before filing this action.

■ A summary judgment is appropriate only where the favored party makes a showing which precludes, as a matter of law, the awarding of any relief to the losing party.[1]

Plaintiff contends (1) that the release was intended to release liability only which arose out of the marketing of the 1951 turkey crop, and (2) that there was no consideration for the release of any liability other than for the marketing of the 1951 turkeys.

■ Since this release was drawn by the attorney for the defendants its provisions must be construed in the light most favorable to the plaintiff.[2]

■ The release recites that in consideration of the payment of $9,350 from the Cooperative "(being the balance owed to me under the marketing of my 1951 crop of turkeys) receipt of which is acknowledged, I do hereby release and discharge the said Cooperative from any and all debts, * * *." The release clearly states that the $9,350 from the Cooperative was the balance owing to Tanner under the marketing of his 1951 crop of turkeys, payment of which he acknowledged. This would suggest that the release deals with obligations of the Cooperative arising out of its marketing Tanner's 1951 crop of turkeys. While the words dealing with the release do not confine it strictly to obligations arising out of the 1951 marketing when read in connection with the pre-

1. See Utah Rules of Civil Procedure, Rule 56(c) and annotation in pocket supplement in 9 U.C.A.1953, also Daum Const. Co. v. Child, 122 Utah 194, 247 P.2d 817; Abdulkadir v. Western Pac. R. Co., 7 Utah 2d 53, 318 P.2d 339; Bullock v. Deseret Dodge Truck Center, Inc., 11 Utah 2d 1, 354 P.2d 559.

2. See Continental Bank & Trust Co. v. Bybee, 6 Utah 2d 98, 306 P.2d 773.

ceding part of that sentence, it clearly suggests that such was the intention of the parties. In view of this fact we conclude that the release is ambiguous on this question, and that the plaintiff was entitled to introduce evidence, which shows that it was the intention of the parties that the release was only of liability arising out of the 1951 marketing of turkeys. It is generally recognized that where a written instrument is ambiguous, such evidence is admissible to show the intent of the parties.[3]

On the other hand even if we were to assume that the instrument was intended to release all of the defendants' obligations which had accrued prior to the making of such release, then there was no consideration for the release of obligations arising out of transactions other than marketing of the 1951 turkeys. For defendants did only what they were otherwise obligated to do.[4] The release expressly recites that the payment was made as the balance owing for marketing the 1951 crop of turkeys. On the face of the instrument it expressly appears that the payment was made to liquidate that obligation, which defendants agreed was the balance owing thereunder.

All of the other evidence tends to indicate that such was the fact, and that the parties had agreed to the amount owing for the 1951 crop. All of the additional evidence introduced at this hearing and prior thereto, definitely tends to indicate that the amount paid was the exact amount which defendants' books showed that it owed plaintiff for the 1951 crop, and that plaintiff agreed to this figure after defendants had produced all of their books and plaintiff's employee had twice audited such books. The payment being for the exact amount which the parties had agreed was owing to plaintiff from the marketing of his 1951 turkeys, there was no consideration given for the release of any other liability which defendants owed to plaintiff. We therefore conclude that the summary judgment was erroneous.

Summary judgment is set aside and the decision reversed with directions to reinstate plaintiff's pleadings and proceed as if no summary judgment had been entered. Costs to appellant.

HENRIOD, McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

3. See 12 Am.Jur. 757–758, Contracts, Sec. 234; McCormick on Evidence, pp. 442–449, Parol Evidence Rule Topic 2, sections 217–220, especially section 219; Continental Bank & Trust Co. v. Stewart, 4 Utah 2d 228, 291 P.2d 890; Continental Bank & Trust Co. v. Bybee, note 2.

4. See 12 Am.Jur. 574–576, Contracts, section 80.